UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LINDA TYMKE, | ) | CASE NO.  1:09 CV 1896 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| CLEVELAND STATE UNIVERSITY, et al., | ) | MEMORANDUM OF OPINION |
| | ) | |
| Defendants. | ) | |

Plaintiff pro se Linda Tymke filed this action against Cleveland State University (CSU) and Cleveland State University Foundation, Inc.  She alleges the defendants discriminated against her based on race, national origin and age in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626. Ms. Tymke seeks $300,000.00 in compensatory damages from each defendant.

## Background

Ms. Tymke, who describes herself as an Hispanic, was employed for thirteen years as an Administrative Assistant in the Division of Advancement at CSU.  Barbara Smith, who is African American, was hired as an Administrative Assistance to also work in the Division six months earlier.  At the time Ms. Tymke was hired, Doris Watts, who was African American, also started working in the Division as an Administrative Assistant.  Division policy at that time supported the employment of two full-time employees and one part-time student at combined annual wages of $70,000- 75,000, less fringe benefits. The African American Assistants held the two full time positions.

Within twelve months of the date she was hired, Ms. Smith was promoted her to Executive Assistant to the Vice President by Vice President K. B. Hampton. When Mr. Hampton left, he was replaced on an interim basis by Robert Gordon, for whom the plaintiff worked. While Mr. Gordon was allegedly fully compensated for the increased responsibilities of his interim position, Ms. Tymke's salary remained the same as his assistant.

From September 1995, until one year thereafter, seven different vice presidents were employed within the Division. During this period, Ms. Tymke worked as an administrative assistant for four of the University's vice presidents, as well as one interim vice president. It is her belief that the high number of vice presidents reflects "the disorder and disarray within the Division and the University to a lesser degree and which invariably creates a high degree of turmoil and stress in the workplace environment." (Compl. at 1.)

At the time Ms. Tymke was hired she claims no one advised her that her responsibilities included to support the Foundation's Board of Directors, as well as the vice presidents. Nevertheless, she became responsible for providing executive level support to the Division's Executive Director Robert Gordon, the Division and the Foundation's Board of Director. During that time, the Board's membership increased to 30+ members and, within a 12-18 months, its standing committees mushroomed from three to seven committees. No adjustment to her salary accompanied these changes in responsibility.

During another transition between vice presidents, the position of Foundation Coordinator was advertised at a much higher salary than plaintiff was earning. Moreover, the position, unlike plaintiff's duties, did not include responsibilities at the Division-level. When Ms. Tymke met with the personnel office to inquire about the position, "[a] satisfactory response was not and could not be provided." (Compl. at 2.) Instead, the internal posting for the position was removed throughout the campus, without explanation.

Ms. Tymke complained she was the "only minority" working for the University's vice president, with a "dual role responsibility." She asserted that the range of her

2

responsibilities and the executive level staff she supported warranted a higher salary.  Plaintiff allegedly worked "massive amounts of overtime" to cover her increased responsibilities. After unsuccessfully attempting to  resolve the issue through personnel, the Office of the President and within her own Division, Ms. Tymke felt compelled to resign.  After her resignation, the Division replaced Ms.  Tymke's position with two full time employees at a combined salary of $99,081.00, less benefits. Ms. Tymke's annual salary was $39,000.00 at the time she resigned.

*Age Discrimination in Employment Act*

The ADEA prohibits employers from discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of the individual's age.  See 29 U.S.C. § 626.  While Ms. Tymke's Title VII claims may have arguable merit, the same cannot be said of her age discrimination claim.

Ms. Tymke asserts that "due to her age at the onset of her personnel issues (25 yrs.) and being newly hired and not at all versed or familiar with University policy and procedure as it relates to promotion, compensation, personnel action forms, et al. that it was also her age and lack of experience that was exploited by the defendants."  (Compl. at 2.)  These allegations are not within the range of actionable claims under the ADEA.  Here, Ms. Tymke asserts she was discriminated against based on her youth and lack of experience.  The ADEA was not established for that reason.  Congress declared, in part, that it is "the purpose of [the ADEA] . . . to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment." 21 U.S.C. §621(b).  Therefore, to the extent she is claiming the defendants took advantage of her youth when she was hired thirteen years ago is not a cognizable claim under the ADEA.

*Conclusion*

Based on the foregoing, plaintiff's Age Discrimination in Employment claim is dismissed, and the court certifies that an appeal from their dismissal could not be taken in good faith.[1]  The Clerk's Office is directed to forward a copy of this order to the defendants.

IT IS SO ORDERED.


 */s/Dan Aaron Polster 9/9/09*          
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE

---

[1]     28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken <u>in forma pauperis</u> if the trial court certifies that it is not taken in good faith.

4